UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| WILLIAM WITTER, ) | |
| ) | |
| Petitioner, ) | 2:01-CV-1034-RLH-LRL |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| E.K. McDANIEL, *et al.*, ) | |
| ) | |
| Respondents. ) | |
| ) | |

Presently before the court is petitioner William Witter's Motion for Stay and Abeyance (docket #76), respondents' Motion to Dismiss Petition for Writ of Habeas Corpus (docket #84),[1] and petitioner's Request for an Evidentiary Hearing (docket #127). Each of these motions has been fully briefed by the parties.

**I.    Background**

On June 28, 1995, a jury in the Eighth Judicial District Court for Nevada found Witter guilty of first degree murder with use of a deadly weapon, attempted murder with use of a deadly weapon, attempted sexual assault with use of a deadly weapon, and burglary. On July 13, 1995, the jury imposed a sentence of death for the murder. On August 11, 1995, the state district court filed the amended judgment of conviction. Witter appealed.

---

[1] In conjunction with their motion to dismiss, respondents filed a Motion for Leave to File Excess Pages (docket #85), which shall be granted *nunc pro tunc* as of June 14, 2006, the date both motions were filed.

On July 22, 1996, the Nevada Supreme Court affirmed Witter's conviction and sentence. After the Nevada Supreme Court denied Witter's petition for rehearing, he petitioned the United States Supreme Court for a writ of certiorari. On May 12, 1997, the Court denied Witter's petition. On October 27, 1997, Witter filed a petition for writ of habeas corpus in the state district court. On February 26, 1999, the state district court held an evidentiary hearing on the petition. On September 25, 2000, the court entered a written order denying relief. Witter appealed.

On August 10, 2001, the Nevada Supreme Court affirmed the lower courts' decision. On September 4, 2001, this court received Witter's initial petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. See docket #5. Though nominally filed in *propria persona*, the petition appears to have been prepared by, or with the assistance of, state post-conviction counsel, David Schieck.

On September 17, 2001, this court appointed the Federal Public Defender's office (FPD) to represent Witter. On November 23, 2005, after protracted discovery litigation and several extensions of time, Witter filed an amended petition for writ of habeas corpus advancing twelve grounds for relief. Docket #67.

**II.    Discussion**

A.    *Stay and Abeyance*

Witter requests that this court stay and hold in abeyance his federal habeas proceedings while he returns to state court to exhaust his remedies for his currently unexhausted claims. He asserts that stay and abeyance is warranted in order to allow him to pursue exhaustion in state court without being time-barred under 28 U.S.C. § 2244(d) when he returns to this court post-exhaustion. In *Rhines v. Weber*, 544 U.S. 269 (2005), the Supreme Court held that, to prevent petitioners from "forever losing their opportunity for any federal review of their unexhausted claims," a district court has discretion to stay a mixed petition (i.e., a petition containing both exhausted and unexhausted claims). *Id* at 275. The Court also held, however, that that discretion is

limited by AEDPA's[2] twin purposes: "reduc[ing] delays in the execution of state and federal criminal sentences" and encouraging state "petitioners to seek relief from state courts in the first instance." *Id.* at 276 (internal quotation marks omitted).  Thus, the Court concluded that stay-and-abeyance is appropriate only when the district court determines that there was "good cause" for the petitioner's failure to exhaust his claims and is improper when the unexhausted claims are "plainly meritless" or where the petitioner has engaged in "abusive litigation tactics or intentional delay." *Id*. at 277-78.

Accordingly, *Rhines* provides broad guidance as to how the district court is to treat a habeas petition containing unexhausted claims.  First, "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id* at 278.  Second, where the foregoing requirements for a stay are not met, "the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief." *Id*.

In opposing Witter's motion for stay and abeyance (docket #86), respondents refer to their concurrent motion to dismiss (docket #84), wherein they argue that each of Witter's claims is unexhausted.  While they do not maintain that the procedure is necessarily inappropriate in this case, they contend that Witter's request for stay is premature until the court makes a determination as to which claims, if any, are exhausted. Docket #86.  According to the respondents, a determination that *all* of Witter's claims are unexhausted would require a dismissal of the entire action under *Rose v. Lundy*, 455 U.S. 509, 510 (1982).  *Id*.  Respondents further argue that, prior to a ruling on which claims are or are not exhausted, they cannot fully address the merits of Witter's request for a stay.  *Id*.

In replying to respondents' opposition, Witter argues that Claims One, Two(B), and

---

[2]  The Antiterrorism and Effective Death Penalty Act of 1996.

1  Five(C) of his petition are clearly exhausted.  Docket #121.  He also argues that, even if the court
2  determines that his petition is wholly unexhausted, it still has the authority, in accordance with
3  *Rhines* and *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), to hold the petition in abeyance.  *Id*.
4        A claim-by-claim exhaustion determination has not been, heretofore, a prerequisite
5  for the use of the stay and abeyance procedure in this court's habeas cases.  Certainly, a
6  determination as to which specific claims the petitioner has yet to exhaust brings focus to the *Rhines*
7  analysis.  Even so, nowhere in *Rhines* does the Court state or suggest that every unexhausted claim in
8  the petition must satisfy, individually, the "good cause" and "potentially meritorious" requirements
9  before a stay will be permitted.  Arguably, a stay is warranted under *Rhines* as long as at least one of
10 the unexhausted claims has potential merit and the petitioner can demonstrate good cause for not
11 exhausting his state court remedies for that claim prior to filing his federal petition.  Indeed, the
12 rationale for permitting a stay would apply with more force to a petition in which only one of the
13 unexhausted claims meets the *Rhines* requirements, but is clearly meritorious, than it would to a
14 petition in which all of the unexhausted claims meet the *Rhines* requirements, but none are more
15 than potentially meritorious.
16       Likewise, in most cases, there is little point to selecting out the particular claims for
17 which the petitioner will be entitled to a stay and those for which he is not.  That is, the court is not
18 inclined to limit petitioner's stay to allow exhaustion of only those claims that specifically meet the
19 *Rhines* requirements.  Perhaps, there will be instances where the inclusion of plainly meritless claims
20 runs the risk of unduly prolonging the state court exhaustion proceedings.  In the absence of any
21 indication that will be the case, however, the federal court should not dictate which claims the
22 petitioner is permitted to raise in his return to state court.
23       Lastly, as to respondents' contention that this court must dismiss, not stay, the
24 petition if it is wholly unexhausted, this court finds some merit in Witter's countervailing argument
25 based on the Supreme Court's dicta in *Pace*.  In *Pace*, the Court held that, to avoid running the risk
26

4

of finding out too late that his state proceeding did not toll the one-year statute of limitations under § 2244(d)(2), a petitioner could "fil[e] a 'protective' petition in federal court and ask[] the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted." 544 U.S. at 416 (citing *Rhines*). By not indicating that this tactic is only available if the "protective" petition is also a "mixed" petition, the Court implies that stay and abeyance is available irrespective of whether any of the petitioner's claims have been exhausted. In the absence of a more definitive statement, however, this court is bound by a Ninth Circuit decision issued subsequent to both *Rhines* and *Pace*. *See Raspberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006). In *Raspberry*, the court of appeals expressly declined to extend the rule in *Rhines* to petitions containing only unexhausted claims. *Id*. Accordingly, this court is unable to employ the stay and abeyance procedure unless Witter's petition contains at least one exhausted claim.

Based on the foregoing, Witter is entitled to stay and abeyance if his petition is a mixed petition that contains an unexhausted claim (or claims) that is potentially meritorious and for which he can show good cause for failing to earlier exhaust in state court. On the issue of whether his petition qualifies as a mixed petition, Witter identifies three claims that he contends are exhausted – Claims One, Two(B), and Five(C). See docket #121, p. 4-9.

In Claim One, Witter alleges that several of his constitutional rights were violated because the prosecutor used his peremptory challenges in an intentionally discriminatory manner to exclude African-American women from the jury. Docket #67, p. 17-54. He argues that he exhausted remedies for this claim in his appeal of the lower court's denial of his state post-conviction petition. This argument fails, however, because the claim presented to the Nevada Supreme Court on collateral attack involved an alleged violation arising under his right to effective assistance of appellate counsel, but not a violation of the underlying constitutional violations Witter now advances in Claim One. See Amended petition, Exhibit 4.3, p. 24-27.

A petitioner satisfies the exhaustion requirement by providing the highest state court

with a full and fair opportunity to consider all claims before presenting them to the federal court. *Picard v. Connor*, 404 U.S. 270, 276 (1971). Both the legal substance and the operative facts must be presented to the state courts. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-845 (1999). The Supreme Court has "emphasized that mere similarity of claims is insufficient to exhaust." *Duncan v. Henry*, 513 U.S. 364, 366 (1995). Caselaw in this and at least one other circuit support the position that, for exhaustion purposes, an ineffective assistance of counsel claim is separate and independent from the underlying constitutional violation upon which it is based. *Kelly v. Small*, 315 F.3d 1063, 1068 (9th Cir. 2003); *Lordi v. Ishee*, 384 F.3d 189, 194 (6th Cir. 2004). Accordingly, Claim One is unexhausted because the federal claims in Claim One were not squarely presented to the Nevada Supreme Court in Witter's post-conviction proceeding.

On the other hand, Claims Two(B) and Five(C) are both exhausted. In Claim Two(B), Witter alleges that his constitutional rights were violated because the trial court did not permit counsel to ask prospective jurors whether they were able to consider the two life sentences option if they knew he had committed prior violent felonies. Docket #67, p. 62. In Claim Five(C), he alleges that his constitutional rights were violated by the admission of certain portions of the penalty-phase testimony of Kathryn Cox, one of his victims. *Id.*, p. 83. Witter fairly presented each of these claims to the Nevada Supreme Court in his direct appeal. Docket #121, Exhibit 1, pp. 13-19, 36-37. As such, his current federal petition qualifies as a "mixed petition." Thus, the remaining questions that must be answered before a stay is granted are (1) whether any of the claims he seeks to exhaust are potentially meritorious and (2) whether he can show good cause for not having exhausted those claims in state court.

With respect to the "potentially meritorious" inquiry, the standard should approximate the standard that applies when the court decides whether to deny an unexhausted claim under 28 U.S.C. § 2254(b)(2). *See Rhines*, 544 U.S. at 277. In both instances, the objective is to preserve the principle of comity while preventing the waste of state and federal resources that occurs when a

1  petitioner is sent back to state court to litigate a clearly hopeless claim.  *Cf. Cassett v. Stewart*, 406

2  F.3d 614, 624 (9th Cir. 2005).  Thus, Witter should not be prevented from returning to state court

3  unless "it is perfectly clear that [he] does not raise even a colorable federal claim."  *Id.*

4      Having reviewed the claims that Witter identifies as those he wishes to present in a

5  return trip to state court, this court finds that at least some of them, if taken as true, arguably present

6  a meritorious challenge to his conviction or sentence.  In particular, Claims Eight and Nine, the

7  unexhausted claims for which Witter most strenuously argues for a stay, both fit in this category.

8      In Claim Eight, Witter claims his death sentence is unconstitutional because the state

9  used the same felony charges both to support his conviction on a felony murder theory and to support

10  one of the aggravating factors.  Relying primarily on *Lowenfield v. Phelps*, 484 U.S. 231 (1988), the

11  Nevada Supreme Court has concluded that it violates the Constitution "to base an aggravating

12  circumstance in a capital prosecution on the felony upon which a felony murder is predicated."

13  *McConnell v. State*, 102 P.3d 606, 624 (Nev. 2004).  Based on Witter's allegations under Claim

14  Eight, the *McConnell* holding is potentially applicable to his case.[3]  Because the claim provides

15  Witter with at least some chance of habeas relief, Claim Eight satisfies the "potentially meritorious"

16  standard in *Rhines*.

17      In Claim Nine, Witter alleges that the state committed various acts of prosecutorial

18  misconduct in relation to the penalty phase of his trial.  A substantial portion of Claim Nine is based

19  on contentions that the state failed to disclose material evidence that would have undermined the

20  state's arguments in support of imposing the death penalty and that the state knowingly offered false

21  or misleading testimony and evidence.  Claim Nine contains factual allegations sufficient to raise

22  colorable grounds for relief under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Napue v. Illinois*, 360

---

[3] Moreover, the Nevada Supreme Court has recently decided that the rule announced in *McConnell* may be applied retroactively in Nevada post-conviction proceedings challenging death penalty judgments that became final pre-*McConnell*. *Bejarano v. State*, 2006 WL 3319541, *6 (Nev. November 16, 2006).

U.S. 264 (1959).  Thus, it also satisfies the "potentially meritorious" standard in *Rhines*.

While *Rhines* does not go into detail as to what constitutes good cause for failure to exhaust, the Ninth Circuit has since held that the test is less stringent than an "extraordinary circumstances" standard.  *Jackson v. Roe*, 425 F.3d 654, 661-62 (9th Cir. 2005) (citing *NLRB v. Zeno Table Co.*, 610 F.2d 567, 569 (9th Cir. 1979)).  However, the Ninth Circuit has not provided additional guidance as to the meaning of "good cause."  This court has suggested that good cause under *Rhines* "should not be so strict a standard as to require a showing of some extreme and unusual event beyond the control of the defendant."  *Riner v. Crawford*, 415 F.Supp.2d 1207, 1210 (D. Nev.2006). The court concluded, instead, that the petitioner must show that "he was prevented from raising the claim, either by his own ignorance or confusion about the law or the status of his case, or by circumstances over which he had little or no control."  *Id.* at 1211.

For Claim Eight, Witter contends that good cause exists for his failure to exhaust because *McConnell* was not decided until he had completed his state proceedings.   Because *McConnell* explicitly overruled preexisting caselaw and announced a new basis upon which Witter might challenge his death sentence (*see Bejarano*, 2006 WL 3319541, at *4), the court finds merit in his good cause argument.  A showing that the factual or legal basis for a claim was not reasonably available to counsel has been recognized as sufficient to establish cause for the purpose of excusing a procedural default.  *See Murray v. Carrier*,  477 U.S. 478, 488 (1986).  Although there is currently no clear controlling authority on the issue, most courts have concluded that the "good cause" necessary for stay and abeyance is either the same as or more generous than the showing needed for "cause" to excuse a procedural default.  *See*, *e.g*., *Rhines v. Weber* ( "*Rhines II* "), 408 F.Supp.2d 844, 849 (D. S.D. 2005) ("Supreme Court suggested a more expansive definition of 'good cause' in *Pace* and *Rhines* than the showing needed for 'cause' to excuse a procedural default").  Accordingly, the court finds good cause exists to excuse Witter's failure to exhaust Claim Eight in state court.

As for his failure to exhaust Claim Nine, Witter cites the state's alleged failure to

disclose material exculpatory evidence; more specifically, documents from various government agencies that, according to Witter, would have undermined the state's claims of gang membership and future dangerousness. Relying on *Banks v. Dretke*, 540 U.S. 668, 691-95 (2004), Witter argues that the state's suppression of this evidence provides good cause to excuse his failure to present his prosecutorial misconduct claims in state court. Although *Banks* addressed the cause issue in a slightly different context (i.e., to decide whether petitioner was entitled to present evidence in federal court that he had failed to present in state court), the case is persuasive for the purposes of the present *Rhines* inquiry. Moreover, respondents have offered no argument in opposition to a finding of good cause. As such, the court concludes that Witter has shown good cause sufficient to excuse his failure to exhaust Claim Nine in state court.

In summary, Witter had good cause for his failure to exhaust Claims Eight and Nine;[4] and, the claims are potentially meritorious. Also, the court finds that there is nothing in the record to indicate that Witter has engaged in "intentionally dilatory litigation tactics" either in pursuing his claims in the state courts or in this court. *Rhines*, 544 U.S. at 277. Thus, Witter's request for a stay and abeyance shall be granted.

B.   *Remaining Motions*

Having found that a stay and abeyance is appropriate in this case, the court shall deny respondents' Motion to Dismiss Petition for Writ of Habeas Corpus (docket #84) without prejudice. If Witter fails to obtain the relief he seeks in state court, respondents shall be free to renew the motion upon Witter's return to this court. Likewise, Witter's Request for an Evidentiary Hearing (docket #127) shall also be denied inasmuch as Witter's stated purpose in asking for a hearing was to present evidence in support of his opposition to respondents' motion to dismiss.

---

[4] The court has limited its *Rhines* analysis to Claims Eight and Nine primarily because these are the two claims on which Witter has focused in arguing that he is entitled to a stay. See docket #121, p. 11-14. By doing so, the court makes no finding as to whether other unexhausted claims in Witter's habeas petition meet or fail to meet the *Rhines* requirements for a stay.

**IT IS THEREFORE ORDERED** that petitioner's Motion for Stay and Abeyance (docket #76) is GRANTED.  This federal habeas proceeding is STAYED and further proceedings shall be held in ABEYANCE pending petitioner's exhaustion of state court remedies.

**IT IS FURTHER ORDERED** that respondents' Motion for Leave to File Excess Pages (docket #85) is GRANTED *nunc pro tunc* as of June 14, 2006.  Respondents' Motion to Dismiss Petition for Writ of Habeas Corpus (docket #84) is DENIED without prejudice.

**IT IS FURTHER ORDERED** that petitioner's Request for an Evidentiary Hearing (docket #127) is DENIED as moot.

**IT IS FURTHER ORDERED** that petitioner shall have **forty-five (45)** days from the date this order is entered within which to commence an appropriate state court proceeding. Petitioner's counsel shall seek appointment as counsel for petitioner in the state court proceeding.

**IT IS FURTHER ORDERED** that petitioner shall file a status report describing the status of his state court litigation on or before June 15, 2007, and then every six months thereafter (December 15, 2007; June 15, 2008; December 15, 2008; etc.) during the stay of this action.

**IT IS FURTHER ORDERED** that, following the conclusion of petitioner's state court proceedings, petitioner shall, within **thirty (30) days**, make a motion to lift the stay.

**IT IS FURTHER ORDERED** that this action shall be subject to dismissal upon a motion by respondents if petitioner does not comply with the time limits in this order, or if he otherwise fails to proceed with due diligence, during the stay imposed pursuant to this order.

**IT IS FURTHER ORDERED** that, absent extraordinary circumstances, this will be the final opportunity petitioner shall be permitted to return to state court to exhaust claims for habeas corpus relief.

DATED:   November 27, 2006.

_____
UNITED STATES DISTRICT JUDGE