**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

WILLIAM WITTER,                          )
                                         )
                    Petitioner,          )       2:01-CV-1034-RCJ-CWH
                                         )
vs.                                      )
                                         )       **ORDER**
RENEE BAKER, *et al.*,                   )
                                         )
                    Respondents.         )
                                         )
_____/

This is an action for habeas relief under 28 U.S.C. § 2254 brought by William Witter, a Nevada prisoner sentenced to death.  Respondents have filed a motion to dismiss Witter's second amended petition for writ of habeas corpus.  ECF No. 173  As the bases for their motion, respondents contend that several claims in the petition are time barred by 28 U.S.C. § 2244(d) and that all claims save one are barred by the doctrine of procedural default.  Respondents also argue that some of Witter's claims are not cognizable in an action brought under § 2254.

Witter has filed an opposition to the motion (ECF No. 195) and also seeks leave to file a supplement to that opposition in light the Supreme Court's recent decision in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) (ECF No. 208).

Having considered the parties' arguments and relevant portions of the record, the court concludes as follows.

1       I. *Procedural History*

2           On June 28, 1995, a jury in the Eighth Judicial District Court for Nevada found Witter guilty

3   of first degree murder with use of a deadly weapon, attempted murder with use of a deadly weapon,

4   attempted sexual assault with use of a deadly weapon, and burglary.  On July 13, 1995, the jury

5   imposed a sentence of death for the murder.  On August 11, 1995, the state district court filed the

6   amended judgment of conviction.  Witter appealed.

7           On July 22, 1996, the Nevada Supreme Court affirmed Witter's conviction and sentence.

8   After the Nevada Supreme Court denied Witter's petition for rehearing, he petitioned the United

9   States Supreme Court for a writ of certiorari.  On May 12, 1997, the Court denied Witter's petition.

10  On October 27, 1997, Witter filed a petition for writ of habeas corpus in the state district court.  On

11  February 26, 1999, the state district court held an evidentiary hearing on the petition.  On September

12  25, 2000, the court entered a written order denying relief.  Witter appealed.

13          On August 10, 2001, the Nevada Supreme Court affirmed the lower court's decision.  On

14  September 4, 2001, this court received Witter's initial petition for writ of habeas corpus pursuant to

15  28 U.S.C. § 2254.  ECF No. 5.  Though nominally filed in *propria persona*, the petition appears to

16  have been prepared by, or with the assistance of, state post-conviction counsel, David Schieck.

17          On September 17, 2001, this court appointed the Federal Public Defender's office (FPD) to

18  represent Witter.  The FPD entered a notice of appearance on February 2, 2002.  On November 23,

19  2005, after protracted discovery litigation and several extensions of time, Witter filed an amended

20  petition for writ of habeas corpus advancing twelve grounds for relief.  ECF No. 67.

21          From November 30, 2006, to April 7, 2011, proceedings were stayed to allow Witter to

22  exhaust state court remedies in relation to the claims contained in his amended petition for habeas

23  corpus relief (ECF No. 67).  ECF Nos. 139-163.

24          During that stay, Witter returned to state district court and filed a second state habeas petition

25  on February 14, 2007.  The state district court denied Witter's second state habeas petition. Witter

26

2

1    appealed.  The Nevada Supreme Court affirmed the denial of the petition.  In its order of affirmance,

2    the Nevada Supreme Court found that Witter's petition was procedurally barred as untimely under

3    Nev. Rev. Stat. § 34.726(1) and successive under Nev. Rev. Stat. § 34.810(1).

4         During the pendency of his second state habeas petition, Witter filed a third state habeas

5    petition on April 28, 2008.  The state district court also denied this petition.  Witter appealed.  On

6    November 17, 2010, the Nevada Supreme Court affirmed the denial of Witter's third state habeas

7    petition in an unpublished opinion.  In its order of affirmance, the Nevada Supreme Court found that

8    Witter's third state habeas petition was procedurally barred because the claim raised therein was

9    appropriate for direct appeal and thus subject to dismissal under Nev. Rev. Stat. § 34.810, and

10   because Witter had in fact raised the claim on direct appeal and it was denied on the merits.

11        As noted, proceedings were reopened in this case on April 7, 2011.  ECF No. 163.  Witter

12   filed a second amended federal petition for writ of habeas corpus on July 22, 2011.  ECF No. 167.

13   On September 13, 2011, respondents filed the motion to dismiss that is addressed herein.  ECF No.

14   173.

15        II.  *Timeliness*

16        The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a one-year

17   filing period for § 2254 habeas petitions in federal court.  28 U.S.C. § 2244(d)(1).  The one-year

18   period begins to run from the latest of four possible triggering dates, with the most common being

19   the date on which the petitioner's state court conviction became final (by either the conclusion of

20   direct appellate review or the expiration of time for seeking such review).  *Id.*  Statutory tolling of

21   the one-year time limitation occurs while a "properly filed" state post-conviction proceeding or other

22   collateral review is pending.  28 U.S.C. § 2244(d)(2).

23        Respondents concede that Witter filed his initial petition within the one-year filing period

24   under § 2244(d)(1).  Respondents argue, however, that Witter's amended petition and second

25   amended petition were filed after the one-year period had elapsed.  They further argue that several of

26

                                                    3

the habeas claims in his second amended petition are time-barred from federal court review because those claims do not "relate back" to the initial petition.

The Supreme Court's decision in *Mayle v. Felix*, 545 U.S. 644 (2005), significantly limits a habeas petitioner's ability to have newly-added claims "relate back" to the filing of an earlier petition and, therefore, be considered timely under 28 U.S.C. § 2244(d).  In *Mayle*, the Court held that the Ninth Circuit's former relation-back standard under Federal Rule of Civil Procedure 15(c)(2) (now Rule 15(c)(1)(B)),[1] which allowed an amendment to a habeas petition to "relate back" to the date of the original petition "so long as the new claim stems from the habeas petitioner's trial, conviction, or sentence," was too broad.  *Id*. at 656-57.  The Court held that an amended claim in a habeas petition relates back for statute of limitations purposes only if it shares a "common core of operative facts" with claims contained in the original petition.  *Id*. at 663-64.  The common core of operative facts must not be viewed at too high a level of generality, and an "occurrence," for the purposes of Fed. R. Civ. P. 15(c), will consist of each separate set of facts that supports a ground for relief.  *Id*. at 661.

According to the respondents, Claims One, Three, Four, Six, Eight, Nine, and Eleven through Fourteen are untimely because they do not "relate back" to the initial petition.  They also argue that ineffective assistance of counsel claims contained within Claims Five, Seven, and Ten are untimely as well.

Witter raises several arguments as to why some or all of his claims are not time-barred.  First, he contends that, due to a "merging of extraordinary circumstances," he is entitled to equitable tolling of the statute of limitations.  According to Witter, these circumstances include (1) his reliance on pre-*Mayle* Ninth Circuit precedent and this court's "standard procedure" for adjudicating capital cases in effect at the time he initiated this proceeding in 2001, and (2) the State's dilatory conduct during discovery proceedings.  He also claims that he should not be punished for delays caused by

---

[1]     Effective December 1, 2007, former Fed. R. Civ. P. 15(c)(2) was amended for stylistic purposes only and recodified as Fed. R. Civ. P. 15(c)(1)(B).

4

1   the frequent change in federal habeas counsel assigned to represent him.

2         The Supreme Court has held that, in appropriate cases, equitable tolling is applicable to the

3   statute of limitations imposed by § 2244(d). *Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010).

4   Under *Holland*, a habeas petitioner is entitled to equitable tolling only if he can show "(1) that he has

5   been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way

6   and prevented timely filing." *Id*. at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005))

7   (internal quotation marks omitted). The application of equitable tolling is "highly fact-dependent."

8   *Espinoza-Matthews v. California*, 432 F.3d 1021, 1026 (9th Cir. 2005).; *Whalem/Hunt v. Early*, 233

9   F.3d 1146, 1148 (9th Cir. 2000); *see also Holland*, 130 S.Ct. at 2565 ("often fact-intensive"). "[T]he

10  threshold necessary to trigger equitable tolling ... is very high, lest the exceptions swallow the rule."

11  *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) (quoting *Miranda v. Castro*, 292

12  F.3d 1063, 1066 (9th Cir. 2002), and *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)).

13        As to Witter's purported reliance on precedent prior to the Supreme Court's decision in

14  *Mayle*, the Ninth Circuit did not define the scope of relation back under Rule 15(c), as applied to

15  habeas cases, until its decision in *Felix v. Mayle*, 379 F.3d 612 (9th Cir. 2004), the case subsequently

16  overturned by the Supreme Court. Prior to that, there was no controlling case law in effect that

17  would have mandated a finding that claims in an amended petition would relate back to the initial

18  petition based merely on the fact that the claims arose from the same trial, conviction, or sentence.

19  In addition, most other circuits at the time took a narrow view in permitting habeas petition

20  amendments to relate back under Rule 15(c) (*see United States v. Hicks*, 283 F.3d 380, 388-389

21  (D.C. Cir. 2002) (relevant transaction must be defined more narrowly than the trial and conviction);

22  *United States v. Espinoza-Saenz*, 235 F.3d 501, 503-505 (10th Cir. 2000) (same); *Davenport v.

23  United States*, 217 F.3d 1341, 1344-1346 (11th Cir. 2000) (same); *United States v. Pittman*, 209 F.3d

24  314, 317-318 (4th Cir. 2000) (same); *United States v. Duffus*, 174 F.3d 333, 337 (3rd Cir. 1999)

25  (same); *United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir. 1999) (same)), with only one circuit

26

1   reading Rule 15(c) in the manner adopted by the Ninth Circuit in *Felix v. Mayle* (*see Ellzey v. United*

2   *States*, 324 F.3d 521, 525-27 (7th Cir. 2003) (if original petition is timely filed, amendments referring

3   to the same trial conviction may relate back)).  Thus, Witter's alleged reliance on pre-*Mayle*

4   authority would warrant, at most, equitable tolling for the time between the Ninth Circuit's decision

5   in *Felix v. Mayle* (August 9, 2004) and the Supreme Court's reversal of that decision in *Mayle* (June

6   23, 2005).  *Cf. Harris v. Carter*, 515 F.3d 1051, 1056 (9th Cir. 2008) (granting equitable tolling

7   where petitioner was misled, by a Ninth Circuit holding, "into believing that he had ample time to

8   file his federal habeas petition, whereas in reality time was running out").

9        Witter's claimed reliance on the court's scheduling of the proceedings herein presents a

10  closer question.  Consistent with the common procedure in effect at the time, this court entered

11  scheduling orders - the first on January 24, 2002, the second on April 5, 2002, – that set aside

12  considerable time for petitioner to gather and review the record and to conduct discovery, if

13  authorized, *prior* to deciding whether to file an amended petition.  ECF Nos. 8/11.  The second

14  scheduling order set a deadline for Witter to either file either an amended petition or a declaration

15  that "there are no grounds for relief in addition to those asserted in the original petition."  ECF No.

16  11, p. 3.[2]  That deadline, December 5, 2002, was several months after the date on which Witter's

17  one-year filing period under AEDPA would elapse.[3]

18        And, as it turned out, discovery proceedings extended well beyond the initial time-frame

19  established by the court, which was not an uncommon occurrence, nor one for which one party was

---

23

24        [2]    Citations to page numbers for electronically filed documents are based on the ECF pagination.

25        [3]    The parties do not dispute that, to the extent that the applicable triggering is date on

26  which his state court conviction became final, Witter's AEDPA deadline was April 1, 2002.

1   necessarily more at fault than the other.[4]  The court granted numerous extensions for time in relation

2   to both discovery proceedings and the deadline for the amended petition, most, if not all, of which

3   were unopposed.  Consequently, Witter's first amended petition was filed almost three years after the

4   deadline set in the second scheduling order.

5          An order that simply sets forth a filing date for an amended petition comes with no assurance

6   that new claims for relief in that petition will relate back to the initial petition for timeliness

7   purposes.  The same goes for orders that merely extend that filing date.  Even so, the court's

8   scheduling orders, while not prohibiting Witter from filing an earlier amended petition, certainly

9   encouraged his counsel to spend a considerable amount of time engaging in pre-amendment

10  activities, such as record review, investigation, and authorized discovery.  Moreover, there is little

11  question that, until the Supreme Court decided *Mayle* on June 23, 2005, both parties to this action

12  were proceeding based on the assumption that the claims in Witter's amended petition, when filed,

13  would not be subject to dismissal under § 2244(d).

14         The problem for Witter is that instructions or orders from the court will not provide grounds

15  for equitable tolling absent a showing that they "affirmatively misled" the petitioner.  *See Ford v.*

16  *Pliler*, 590 F.3d 782, 786 (9th Cir. 2009).  In *Ford*, the district court had denied the petitioner's

17  motion to stay his partially unexhausted petition and gave him the following three options:  (1) to

18  dismiss his petitions without prejudice and then, after exhausting in state court the previously

19  unexhausted claims, to re-file in federal court; (2) to dismiss the unexhausted claims and present the

20  federal court with only his exhausted claims; or (3) to demonstrate that all of his claims had already

21  been exhausted in state court.  *Id*. at 785.  Ford chose the first option.  *Id*.  When he returned to

22  federal court post-exhaustion, his petition was untimely and, as such, dismissed with prejudice.  *Id*.

23         In construing the Supreme Court's opinion in the case above (*Pliler v. Ford*, 542 U.S. 225

24  _____

25         [4]         Accordingly, the court discounts Witter's argument that the State's allegedly dilatory conduct in complying with discovery requests is a factor that should be considered in determining whether he is entitled to equitable tolling.

26

1    (2004)), the court of appeals held that Ford was not affirmatively misled, and thus not entitled to

2    equitable tolling, even though the one-year limitation period had already expired when the district

3    court had given him the three options listed above. *Id.* at 786-88.  The court noted that, "[i]n order to

4    show that he was affirmatively misled, Ford needed to point to some inaccuracy in the district court's

5    instructions." *Id.* at 788.

6        Here, like Ford, Witter has failed to identify an affirmative misstatement in the court's

7    scheduling orders.  While Witter may have justifiably assumed that he was free to amend his initial

8    petition without timeliness concerns, at no point did the court indicate to him that any new claims

9    added after April 1, 2002, would necessarily relate back to that petition for the purposes of 28 U.S.C.

10   § 2244(d).  Thus, as harsh as it may seem, Ninth Circuit case law does not allow for equitable tolling

11   with respect to new claims in Witter's amended petition.  *See also Brambles v. Duncan*, 412 F.3d

12   1066, 1068-70 (9th Cir. 2005) (denying equitable tolling based on *Pliler v. Ford*, 542 U.S. 225

13   (2004)).  Moreover, the apparent unfairness to Witter is softened by the fact that, even with

14   discovery proceedings long completed (see ECF No. 59, p. 5), he waited five full months *after* the

15   decision in *Mayle* to file his first amended petition.

16        As for the changes in federal habeas counsel, Witter has been represented throughout these

17   proceedings by the FPD.  Mere changes in the FPD staff members assigned to his case do not qualify

18   as an "extraordinary circumstance" that warrants equitable tolling.

19        Witter's next argument as to why some or all of his claims are not time-barred is that he filed

20   his amended petitions within a year of triggering dates under 28 U.S.C. § 2244(d)(1)(D), which

21   begins the one-year period on "the date on which the factual predicate of the claim or claims

22   presented could have been discovered through the exercise of due diligence."  Specifically, he argues

23   that the factual basis for Claim Four was not available until October 29, 2009, the date on which the

24   Nevada Supreme Court affirmed the lower court's denial of his claim for relief based on *McConnell*

25

26

*v. State*, 102 P.3d 606 (Nev. 2004),[5] and the factual basis for the ineffective assistance of counsel portion of Claim Seven[6] was not available until the September 17, 2007, the date on which the Ninth Circuit issued *Polk v. Sandoval*, 503 F.3d 903 (9th Cir. 2007).   He also claims that the facts supporting Claim Three, based on *Batson v. Kentucky*, 476 U.S. 79 (1986), were not available until February 11, 2005, when the State disclosed notes taken by the prosecutor during jury selection.

Claim Four alleges that the Nevada post-conviction court committed constitutional error because, in its re-weighting analysis after finding two aggravating circumstances invalid under *McConnell*, it used the trial record to guess which mitigating circumstance the jury would have found.  Witter is correct that the facts giving rise to this claim did not exist until October of 2009.  And, while respondents argue that Witter nonetheless failed to present this claim until July of 2011, more than a year later, the statute of limitations was tolled while Witter's third state post-conviction proceeding was pending in state court.  *See* 28 U.S.C. § 2244(d)(2).  As such, Claim Four was timely filed.[7]

The same cannot be said for the ineffective assistance of counsel claim in Claim Seven, however.  The claim alleges that counsel was ineffective in failing to challenge the trial court's jury instruction on premeditation.  In *Polk*, the Ninth Circuit held that the Nevada Supreme Court's rejection of a challenge to the premeditation instruction was contrary to clearly established federal law.  *See Polk*, 503 F.3d at 911.  While it arguably adds merit to Claim Seven, the *Polk* decision did not establish the factual predicate for the claim.  *See Shannon v. Newland*, 410 F.3d 1083, 1089 (9th

---

[5]       In *McConnell*, the Nevada Supreme Court ruled that it is "impermissible under the United States and Nevada Constitutions to base an aggravating circumstance in a capital prosecution on the felony upon which a felony murder is predicated."  *McConnell*, 102 P.3d at 624.

[6]       Respondents do not challenge the timeliness of the remaining portion of Claim Seven.

[7]        Despite Witter's arguments to the contrary, the timeliness of Claim Four (or any of his other claims) does not mean that his entire second amended was timely filed.  *See Mardesich v. Cate*, 668 F.3d 1164, 1170-71 (9th Cir. 2012) (holding that AEDPA's statute of limitations applies to each claim in a habeas application on an individual basis).

1  Cir. 2005).

2        Claim Three alleges that the prosecutor's use of a peremptory challenge to strike Elois

3  Brown, an African-American woman, from the jury panel was racially motivated in violation

4  of *Batson* and its progeny.  According to Witter, the aforementioned jury notes demonstrate that the

5  prosecutor's stated reason for striking Ms. Brown were pretextual.  He further claims that the notes

6  are "newly discovered evidence" that, even by the exercise of reasonable diligence, could not have

7  been obtained earlier than February 5, 2005, when the prosecutor provided a copy of the notes during

8  a deposition taken by Witter.

9        The problem with this argument is that Witter raised a *Batson* issue in relation to Ms. Brown

10 as early as August 8, 1998.  ECF No. 119-8, p. 7-9.  At most, the jury notes may lend evidentiary

11 support for the claim.  They do constitute the "factual predicate" of the claim.  Accordingly, §

12 2244(d)(1)(D) does not bear on the timeliness of Claim Three.

13       Witter's final argument as to why his claims are not time-barred is that, by dismissing those

14 claims, the court would be depriving him of his right to counsel under 18 U.S.C. § 3599(a)(2)

15 because this action is then based the "bare bones petition he filed without assistance of counsel."

16 ECF No. 195, p. 54.  This argument would more persuasive had current counsel, the FPD, not been

17 appointed two weeks after this court received Witter's initial petition and with over six months left

18 in the one-year filing period.  See ECF No. 3.  Under Witter's reasoning, he could have waited

19 indefinitely to file his amended petition based on the mere fact that his initial petition was filed while

20 unrepresented by counsel.[8]

21       For reasons not clear from the record, the FPD did not enter a formal notice of appearance

22 until February 6, 2002, less than month prior to the expiration of the one-year period.  ECF No. 9.

23 However, even if the statute of limitations was tolled until that date, Witter's amended petitions

24

25       [8]      As noted above, while not formally represented by counsel, Witter appears to have been
   assisted by state post-conviction counsel David Schieck in filing his initial petition.  Schieck's signature
   appears next to Witter's on the final page of the petition.  ECF No. 5, p. 24.

26

1    would still be filed well beyond the statutory period.

2           Finally, while Witter insists that his claims are timely based on the arguments above, he also

3    contends that Claims One, Three, Eight, and Ten, are timely because they relate to claims raised in

4    his original petition.

5           Claim One is divided into three sub-parts. Claim One(A) alleges that the State presented false

6    evidence that Witter was a member of a street and prison gang called the Nortenos.  Claim One(B)

7    alleges that the State withheld information contradicting its assertion that Witter was a member of

8    this gang.  Claim One (C) alleges that this false evidence so prejudiced Witter in the eyes of the jury

9    that he was prevented him from receiving a fair trial and sentencing.  Witter is correct that Ground

10   Twelve of the original petition alleges the same core of operative facts as those presented in sections

11   A and C.  See ECF No. 5, p. 18.  Thus, Claims One(A) and (C) relate back and, therefore, are not

12   time-barred.  Claim One(B), however, does not relate back, nor do the ineffective assistance of

13   counsel claims contained within Claim One.

14          As discussed above, Claim Three is a *Batson* claim focused on the removal of on particular

15   juror, Lois Brown.  Witter argues that this claim relates back to Ground Fourteen(A) in his initial

16   petition.  However, Ground Fourteen(A) consists merely of a broad allegation that Witter's due

17   process rights were violated because counsel failed to argue on direct appeal that the State excluded

18   minorities from the jury panel.  ECF No. 5, p. 22.  The core facts underlying Claim Three are

19   different in type from the core facts underlying Ground Fourteen(A).  *See Schneider v. McDaniel*,

20   674 F.3d 1144, 1151 (9th Cir. 2012).  Consequently, there is no relation back between the two claims.

21          Claim Eight alleges that Witter's death sentence is unconstitutional by virtue of the State's

22   use of his juvenile convictions as a non-statutory aggravating circumstance during the penalty phase.

23   Witter contends that the supporting allegations for this claim were raised under Grounds Four(D),

24   Thirteen(B), and Fourteen(F) in his original petition.  Ground Four(D) alleges only that the

25   prosecutor improperly commented on future crimes.  ECF No. 5, p. 8.  Ground Thirteen(B) makes a

26

11

general claim that trial counsel were ineffective in their preparation for the penalty hearing. *Id.*, p. 20. Ground 14(F) alleges only that appellate counsel failed to challenge "the issue of tenuous and specious evidence to support the allegations of juvenile rape and force." *Id.* p. 22. Having practically no operative facts in common with these three claims, Claim Eight does not relate back.

Claim Ten alleges that his death sentence is unconstitutional due to the trial court's admission of impermissible and unduly prejudicial victim impact evidence from the relatives of the deceased. This claim shares a common core of operative facts with Ground Five of Witter's original petition. As such, Claim Ten is not time-barred.

As for Claim Fourteen, this court agrees with Witter that a cumulative error claim does not necessarily need to be timely filed in the sense that this court will nonetheless consider the cumulative impact of constitutional errors properly brought before this court. *See Killian v. Poole*, 282 F.3d 1204, 1211 (9th Cir. 2002) (stating that "even if no single error were prejudicial, where there are several substantial errors, 'their cumulative effect may nevertheless be so prejudicial as to require reversal.' ") (quoting *United States v. de Cruz*, 82 F.3d 856, 868 (9th Cir. 1996)).

Based on the foregoing, the court concludes that Claims One(B), Three, Six, Eight, Nine, Eleven, Twelve, and Thirteen are time-barred. In addition, the ineffective assistance of counsel claims contained within Claims One, Five, Seven, and Ten, are also time-barred.

III. *Procedural Default*

A federal court will not review a claim for habeas corpus relief if the decision of the state court denying the claim rested on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991). The Court in *Coleman* stated the effect of a procedural default as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).

A state procedural bar is "independent" if the state court explicitly invokes the procedural rule as a separate basis for its decision. *McKenna v. McDaniel*, 65 F.3d 1483, 1488 (9th Cir. 1995). A state court's decision is not "independent" if the application of a state's default rule depends on a consideration of federal law. *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000). Also, if the state court's decision fails "to specify which claims were barred for which reasons," the Ninth Circuit has held that the ambiguity may serve to defeat the independence of the state procedural bar. *Valerio v. Crawford*, 306 F.3d 742, 775 (9th Cir. 2002); *Koerner v. Grigas*, 328 F.3d 1039, 1050 (9th Cir. 2003).

A state procedural rule is "adequate" if it is "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Calderon v. United States Dist. Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (citation and internal quotation marks omitted). In *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003), the court of appeals announced a burden-shifting test for analyzing adequacy. Under *Bennett*, the State carries the initial burden of adequately pleading "the existence of an independent and adequate state procedural ground as an affirmative defense." *Id*. at 586. The burden then shifts to the petitioner "to place that defense in issue," which the petitioner may do "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Id.* Assuming the petitioner has met his burden, "the ultimate burden" of proving the adequacy of the state bar rests with the State, which must demonstrate "that the state procedural rule has been regularly and consistently applied in habeas actions." *Id*.

Respondents argue that all of Witter's claims except for Claim Four are barred from federal review by the procedural default doctrine. In affirming the lower court's denial of Witter's second state petition, the Nevada Supreme Court concluded as follows:

Witter's petition was untimely and successive. See NRS 34.726; 34.810(2).

13

1

2

3

4

5

> Accordingly, in order for Witter's claims to be considered on the merits, he had to demonstrate both good cause for his delay and for failing to raise the claims previously and actual prejudice.  See NRS 34.726(1); 34.810(1), (3).  In addition, many of his claims had already been resolved by this court and were barred by the doctrine of the law of the case.  See Hall v. State, 91 Nev. 314, 316, 535 P.2d 797, 799 (1975).  Moreover, because Witter's petitition was filed more than 5 years after the resolution of his prior petition and the State specifically pleaded laches in a motion to dismiss, Witter had to overcome the presumption of prejudice to the State.  See NRS 34.800(2).

6

7

ECF No. 184-1, p. 9.  The state supreme court rejected Witter's arguments that he could overcome

8

the procedural bars by showing good cause and actual prejudice.  Id., p. 9-13.

9

Under Nev. Rev. Stat. § 34.726(1), a petition is untimely if filed later than one year after the

10

entry of the judgment of conviction or, if an appeal has been taken from the judgment, within one

11

year after the Nevada Supreme Court issues its remittitur.  Nev. Rev. Stat. § 34.810 addresses

12

successive petitions and requires dismissal of claims that have already been raised and adjudicated

13

on the merits, as well as claims that could have been raised in an earlier proceeding, but were not.

14

Respondents contend that, as a result of the Nevada Supreme Court's dismissal of Witter's

15

second state petition on procedural grounds, this court is barred by the doctrine of procedural default

16

from considering all of Witter's pending claims except for Claim Four, which the Nevada Supreme

17

Court considered on the merits.  ECF No. 173, p. 29.  Respondents meet their initial pleading burden

18

under Bennett by asserting that the Nevada Supreme Court's application of Nev. Rev. Stat. § 34.726,

19

34.800, and § 34.810, to Witter's second state post-conviction petition constitutes an independent

20

and adequate state procedural grounds for denying relief.  Id.  In response, Witter advances several

21

arguments challenging the independence and adequacy of the state procedural rules at issue.

22

First, Witter contends that the Nevada Supreme Court, in his second state post-conviction

23

proceeding, reviewed the merits of all of his claims when it analyzed whether the jury would have

24

selected the death penalty absent the erroneous aggravating circumstances.  There is no indication in

25

the written opinion, however, that the court conducted such a review.  See ECF No. 184-1.

26

Next, he argues that the Nevada Supreme Court addressed the merits of his claims under

14

*Brady*[9] and his claim under *Polk*, thus, the court's rejection of those claims was not independent of federal law.  With respect to the *Brady* claims, the Nevada Supreme Court addressed Witter's claims that, because the prosecution withheld evidence, he was unable to raise the claims earlier.  ECF No. 184-1, p. 12-13.  The court concluded that Witter's claims in this regard "are wholly without merit," but gave no indication that it was relying upon federal law.  *Id*.  Thus, this court does not agree that the state court's decision was interwoven with federal law.  *Cf. Cooper v. Neven*,  641 F.3d 322, 332 (9th Cir. 2011) ("In this case, the Nevada Supreme Court explicitly relied on its federal *Brady* analysis as controlling the outcome of its state procedural default analysis.").

Likewise, the state court's rejection of Witter's *Polk* claim (Claim Seven(A)) did not implicate federal law.  See ECF No. 184-4.  Even so, Witter did not default the claim in state court pursuant to an independent and adequate state procedural rule.  The court held that the claim was defaulted under Nev. Rev. Stat. § 34.810(1)(b)(2), which requires the dismissal of claims that could have been raised on direct appeal, but were not.  *Id*., p. 2.  But the court also held that the claim is barred pursuant to the doctrine of the law of the case because Witter raised it on direct appeal and the court rejected the claim on the merits.  *Id*.  As such, the claim is not procedurally defaulted irrespective of whether § 34.810(1)(b)(2) is an adequate procedural bar.

Speaking of which, Witter points out that the Ninth Circuit ruled in *Valerio* that the successive petition bar is inadequate to bar federal review.  *See Valerio*, 306 F.3d at 777-78.  By citing to *Valerio*, he has carried his burden under *Bennett;* and the burden "shifts back to the government to demonstrate that the law has subsequently become adequate."  *King v. LaMarque*, 464 F.3d 963, 967 (9th Cir. 2006).

Respondents argue that the Supreme Court's decisions in *Beard v. Kindler*, 558 U.S. 53 ((2009) and *Walker v. Martin*, 131 S.Ct. 1120 (2011), undermine the validity of *Valerio* because they establish that a discretionary procedural rule can serve as an adequate ground to bar federal review.

---

[9]  *Brady v. Maryland*, 373 U.S. 83 (1963)

1    Be that as it may, the cases do not relieve respondents of their "ultimate burden" under *Bennett*.

2    The court in *Valerio* found that the bar was inadequate as of 1990. *Valerio*, 306 F.3d at 778.

3    Because the analysis focuses on the time the purported default occurred and not when a state court

4    actually applies the bar, respondents must show that Nev. Rev. Stat. § 34.810 had become clear,

5    consistently applied, and well-established by the time of Witter's first state post-conviction

6    proceeding (October 1997). *See Petrocelli v. Angelone*, 248 F.3d 877, 886 (9th Cir. 2001) (citing

7    *Fields v. Calderon*, 125 F.3d 757, 760-62 (9th Cir. 1997)). Cases decided after the time of the

8    purported default are generally irrelevant in determining the adequacy of the rule. *See Lambright v.*

9    *Stewart*, 241 F.3d 1201, 1203 (9th Cir. 2001). Moreover, in this instance, the inquiry is limited to

10   capital cases. *See Valerio*, 306 F.3d at 776 (recognizing Nevada Supreme Court's "commendable

11   policy" in capital cases of exercising discretionary *sua sponte* power to overlook the successive

12   petition bar).

13   Respondents have cited to only a handful of cases that potentially meet the foregoing criteria.

14   See ECF 205-3. Consequently, the respondents have not carried their burden of demonstrating the

15   bar had become adequate between 1990 and October of 1997.

16   With respect to Nev. Rev. Stat. § 34.726, however, the Ninth Circuit has rejected the

17   argument that the Nevada Supreme Court of Nevada inconsistently applied the procedural bar for

18   time periods up to 1996. *See Loveland v. Hatcher*, 231 F.3d 640, 642–63 (9th Cir. 2000) (as of

19   1993); *Moran v. McDaniel*, 80 F.3d 1261, 1269-70 (9th Cir. 1996) (as of 1996). There have been no

20   Ninth Circuit decisions finding the bar inadequate as a general matter.

21   Witter concedes that the Ninth Circuit held that the bar was generally adequate to bar federal

22   review of state petitions that were filed up to a certain point in time, but argues that the bar was no

23

24

25

26

16

1    longer adequate at the time of his purported default.[10]

2        First, Witter contends that the bar is inadequate due to the changes to the procedural

3    landscape brought about by *Crump v. Warden*, 113 Nev. 293, 934 P.2d 247 (1997).  In *Crump*, the

4    Nevada Supreme Court held that the mandatory appointment of post-conviction counsel required by

5    Nev. Rev. Stat. § 34.820(1)(a) carries with it the right to have that counsel provide effective

6    assistance.  113 Nev. at 302-05, 934 P.2d at 252-54.  According to Witter, the Nevada Supreme

7    Court, in order to vindicate a petitioner's right to effective assistance of post-conviction counsel, will

8    ignore the timeliness and successive petition bars.  In support of this argument, he offers three

9    examples:  *Feazell v. State*, Nev. Sup. Ct. No. 37789, Order Affirming in Part and Vacating in Part

10   (November 14, 2002) (ECF No. 68-2, p. 39-40; ECF No. 68-3, p. 1-7); *Middleton v. Warden*, 120

11   Nev. 664, 98 P.3d 694  (2004); and *Rippo v. State*, 122 Nev. 1086, 146 P.3d 279 (2006).

12       Beyond the fact that they were issued after the date of Witter's default, none of these cases

13   reference Nev. Rev. Stat. § 34.726; and, only the opinion in *Feazell* references at least one of the

14   procedural bars at issue here (i.e., Nev. Rev. Stat. 34.810(1)(b)).  ECF No. 68-3, p. 3.  Even

15   assuming *Feazell* serves an example of the inconsistent application of the rule, the case shows, at

16   most, that the Nevada Supreme Court, in some instances, may exercise its discretion to bypass an

17   applicable procedural bar to reach an issue with obvious merit.  Likewise, in *Middleton*, the Nevada

18   Supreme Court merely gave the petitioner another opportunity to litigate his post-conviction petition

19   with a new attorney after finding that his existing attorney had "repeatedly violated this court's orders

20   and procedural deadlines" and submitted work product that was "wholly substandard and

21   unacceptable."  120 Nev. at 667-69, 98 P.3d at 696-98.  The court's exercise of discretion in these

22   isolated cases does not necessarily render the rule inadequate to support a state decision in other

23   ─────────────────

24       [10]     Witter identifies the date of default as October 27, 1997, the date his first state
     post-conviction proceeding was initiated.  ECF No. 195, p. 73.  The respondents place the date at
     January 15, 1998, one year after the Nevada Supreme Court issued its remittitur in relation to Witter's
25   direct appeal.  ECF No. 204, p. 30.  While the latter date makes more sense to the court, the difference
     does not impact the court's analysis in this case.

26
                                                      17

1    cases.  *See Walker*, 131 S.Ct. at 1130 (explaining that a rule is not automatically inadequate "upon a

2    showing of seeming inconsistencies" and that state court must be allowed discretion "to avoid the

3    harsh results that sometimes attend consistent application of an unyielding rule").

4          In *Rippo*, the court addressed whether a certain penalty phase jury instruction regarding the

5    consideration of mitigating circumstances was improper. 146 P.3d at 285.  Ostensibly, the Nevada

6    Supreme Court raised the issue *sua sponte* long after the time limit imposed by Nev. Rev. Stat. §

7    34.726 had expired.

8          Placed in context, however, the state supreme court's consideration of the issue has little, if

9    any, bearing on whether § 34.726 is consistently applied.   The state petition for writ of habeas

10   corpus that gave rise to the appeal in *Rippo* was, in fact, filed in a timely manner.  *Id*. at 282.  The

11   state district court had already denied Rippo's petition when the Nevada Supreme Court announced

12   the rule in *McConnell*.  The Nevada Supreme Court found good cause for Rippo raising a

13   *McConnell*-based claim on appeal, as opposed to returning to the lower court, because the legal basis

14   for the claim "was not available at the time he pursued his habeas petition in the district court" and

15   because the claim "present[ed] questions of law that [did] not require factual determinations outside

16   the record."  *Rippo*, 146 F.3d. at 283 (internal citations omitted).

17         The suggestion that the Nevada Supreme Court disregarded Nev. Rev. Stat. § 34.726 in

18   raising the jury instruction issue *sua sponte* after the one-year time limit is misleading because the

19   issue was ancillary to the court's adjudication of Rippo's *McConnell* claim. The court addressed the

20   issue, not as a freestanding ground for relief, but because of the issue's potential impact on the

21   court's harmless error analysis.  *See id*. at 285, 287-88.  Thus, rather than arbitrarily overlook

22   statutory default rules, the Nevada Supreme Court merely considered the impact of the defective the

23   jury instruction in the process of ruling upon a habeas claim (i.e., Rippo's *McConnell* claim) that had

24   been raised in a manner consistent with Nevada law.

25         Next, Witter argues that, even though § 34.726 was in effect at the time of his default, the

26

18

Nevada Supreme Court did not clarify that the bar would apply to successive petitions until the court

issued *Pellegrini v. State*, 117 Nev. 860, 34 P.3d 519 (2001).  The statute was enacted in 1991 and

applies to petitions filed on or after January 1, 1993.  *Pellegrini*, 34 P.3d at 525.  Prior to January 1,

1993, "the sole statutory considerations for timely filing [of a petition for writ of habeas corpus]

under Chapter 34 were laches, pursuant to NRS 34.800, and the prerequisite at former NRS 34.725

that a prior post-conviction petition pursuant to NRS Chapter 177 had to be timely filed." *Id.* at 529.

    While *Pellegrini* arguably stands as the first clear pronouncement by the Nevada Supreme

Court that § 34.726 applies to successive state habeas petitions (*see id.* at 526), there is nothing in

the text of the statute itself to suggest that such would not be the case.  Moreover, the Nevada

Supreme Court had never, prior to *Pellegrini*, taken a contrary position.  Here, Witter filed his

second state petition approximately fourteen years after the effective date of § 34.726 and over five

years after the issuance of *Pelligrini*.  Thus, he cannot reasonably argue that, due to ambiguity as to

its applicability to successive petitions, the rule was not clearly established at the time of his

default.[11]

    Next, Witter argues that Nev. Rev. Stat. § 34.726 does not apply in his case because he can

meet the statute's "good cause" exception to the rule or, alternatively, the good cause exception is

not clear, consistently applied, and well-established.  Nev. Rev. Stat. § 34.726 provides that good

cause sufficient to excuse the default exists if the petitioner demonstrates that the delay is not his

fault.  According to Witter, the Nevada Supreme Court has suggested that a subjective standard is to

be applied and that his counsel's failure to act was not his "fault" in this context.

    He cites, however, only two cases to support this argument – *Bennett v. State*, 111 Nev.

---

[11]    Even assuming *arguendo* that the holding in *Pellegrini* was a departure from the previously-accepted construction of Nev. Rev. Stat. § 34.726, a federal court can find a procedural default based on the new law when a significant amount of time passes after a change in state law and the petitioner still fails to raise his claims in state court.  *See Bennett*, 322 F.3d at 579 (finding that petitioner's substantial delay after the California Supreme Court's creation of a timeliness rule was a "continuous" default).

1   1099, 901 P.2d 676 (1995) and *Pellegrini*.  The footnote in *Pellegrini* that Witter relies upon is dicta

2   and elsewhere in the decision the court clarified that, to show good cause under § 34.726,  a

3   petitioner "must demonstrate that an impediment external to the defense prevented him from raising

4   his claims earlier."  34 P.3d at 526 n. 10, 537.  The Nevada Supreme Court has consistently applied

5   that standard for good cause.  *See State v. Powell*, 122 Nev. 751, 756, 138 P.3d 453, 456 (2006);

6   *Sullivan v. State*, 120 Nev. 537, 542, 96 P.3d 761, 765 (2004); *Hathaway v. State*, 119 Nev. 248,

7   252, 71 P.3d 503, 506 (2003).

8       Witter also argues that Nev. Rev. Stat. § 34.726 cannot bar federal review because it is

9   inconsistently applied according to the Nevada Supreme Court's "unfettered discretion."[12]  To

10   support this argument, he recounts the procedural history of a series of cases in which the state

11   supreme court appears to have disregarded the procedural bar when it arguably applied.

12       As noted above, the Supreme Court has held that a state procedural rule can adequately bar

13   federal habeas review even if the state court exercises its discretion at times to disregard the rule and

14   decide a habeas claim on its merits.  *See Walker*, 131 S.Ct. at 1129-30.  In so holding, the Court

15   observed that "[d]iscretion enables a court to home in on case-specific considerations and to avoid

16   the harsh results that sometimes attend consistent application of an unyielding rule."  *Id*. at 1130.

17       Witter contends that *Walker* does not apply here because the California procedural rules at

18   issue in that case are clearly defined in a "trilogy" of state court cases – i.e., *In re Clark*, 855 P.2d

19   729 (Cal. 1993); *In re Robbins*, 959 P.2d 311 (Cal. 1998); and *In re Gallego*, 141, 959 P.2d 290

20   (Cal. 1998).  However, the Supreme Court focused on that trilogy of cases because California, unlike

21   other states such as Nevada, does not set a determinate time limit for collateral relief applications.

22   *See Walker*, 131 S.Ct. at 1125.  Instead, California's timeliness rules are entirely a product of case

23

24       [12]     Witter also contends that cases showing that the Nevada Supreme Court disregards other
    procedural bars are relevant in determining whether Nev. Rev. Stat. § 34.726 is an adequate bar.  This

25   argument was squarely rejected by the Ninth Circuit in *Moran v. McDaniel*, 80 F.3d 1261, 1270 (9th Cir.
    1996).

26

20

1   law. *Id*. at 1124.  Accordingly, the Court had to rely on those cases to determine whether the rules

2   were adequate to bar federal relief even though the time limit was indeterminate and, therefore,

3   subject to the state court's discretion.  *Id*. at 1128-29.

4   Because Nev. Rev. Stat. § 34.726, by its own language, contains elements parallel to those

5   contained in the trilogy of California cases, those elements did not need to be established by case

6   law.  Suffice it to say that Ninth Circuit, in several cases, has concluded that the Nevada time bar is

7   firmly established and regularly followed by the Nevada courts without relying on state cases to

8   "define" the rule.  *See Collier v. Bayer*, 408 F.3d 1279, 1285 (9th Cir. 2005); *High v. Ignacio*, 408

9   F.3d 585, 590 (9th Cir. 2005); *Loveland*, 231 F.3d at 642–63; *Moran*, 80 F.3d at 1269-70.

10   In light of *Walker*, the sampling of cases that Witter relies upon as evidence that the Nevada

11   Supreme Court inconsistently applies Nev. Rev. Stat. §34.726 does not undermine the adequacy of

12   the rule.  In summary, Witter has not placed the adequacy of §34.726 at issue, as required by *Bennett*.

13   *See King*,  464 F.3d at 967 (noting that when the Ninth Circuit has "already made a determination

14   regarding the adequacy of the state procedural rule, the petitioner's method of placing the defense in

15   issue must be modified"); *see also Ortiz v. Stewart*, 149 F.3d 923, 932 (9th Cir.1998) (holding that

16   petitioner had not met his burden because the court had already held the state procedural rule to be

17   consistently applied and the petitioner failed to cite cases demonstrating subsequent inconsistent

18   application).  Accordingly, this court concludes that Nev. Rev. Stat. § 34.726 was a "clear,

19   consistently applied, and well-established" procedural rule at the time of Witter's default.

20   Finally, Witter identifies several claims that, according to him, are not procedurally defaulted

21   because they were exhausted on the merits on direct appeal or in his first post-conviction proceeding.

22   Having reviewed the claims for which Witter makes this argument and the relevant state court

23   record, the court concludes Witter is correct with respect to Claims One(A) and (C), Two, Three,

24

25

26

1    Five(B), Seven(A), Eight, and Ten(C).  Accordingly, those claims are not procedurally defaulted.[13]

2            As an alternative reason as to why certain claims should not be determined to be procedurally

3    defaulted, Witter argues that the were exhausted on direct appeal via the Nevada Supreme Court's

4    mandatory review under Nev. Rev. Stat. § 177.055(2), which requires the state supreme court to

5    consider, among other things, "whether the sentence of death was imposed under the influence of

6    passion, prejudice or any arbitrary factor."  Nev. Rev. Stat. § 177.055(2)(d).

7            In order to find any claims exhausted by virtue of the Nevada Supreme Court's review under

8    Nev. Rev. Stat. § 177.055, this court must be satisfied that such review encompassed the specific

9    factual and a federal law grounds advanced by the petitioner in his federal petition.  *See Comer v.*

10   *Schriro*, 463 F.3d 934, 954-56 (9th Cir. 2006) (examining whether petitioner's federal habeas claims

11   were impliedly exhausted under the Arizona Supreme Court's independent review process).  In

12   allowing implied exhaustion in *Comer*, the court of appeals noted that, pursuant to Arizona's statutes

13   and case law, the Arizona Supreme Court "examines the entire record, particularly the sentencing

14   hearing, to determine if any procedural errors occurred or other arbitrary factors influenced the

15   sentencing court's decision to impose the death sentence," and that the court "is clearly conscious of

16   its duty to respect the dictates of the Eighth and Fourteenth Amendments and to ensure that the death

17   penalty is not imposed in an arbitrary and capricious fashion."  *Id.* at 955.  In addition, the court of

18   appeals held that only claims that are "clearly encompassed within Arizona's independent review"

19   and  "readily apparent from the record" will be deemed impliedly exhausted.  *Id.* at 956.

20           Here, neither the statute itself nor Nevada case law obligates the Nevada Supreme Court to

21   apply federal law standards in conducting its review under Nev. Rev. Stat. § 177.055.  *Sechrest v.*

22   *Ignacio*, 943 F.Supp. 1245, 1250 (D.Nev. 1996).  Moreover, Witter has not shown that any of the

23   claims at issue are "clearly encompassed" within the scope of Nev. Rev. Stat. § 177.055 and "readily

24   _____

            [13]       Claim Fourteen is not procedurally defaulted for the same reason it is not time-barred.

25

26

1   apparent" in the record reviewed by the Nevada Supreme Court.  Thus, none of the claims were

2   exhausted on direct appeal by operation of the mandatory review statute.

3          Based on the foregoing, the court concludes that Claims One(B), Five(A), Six, Seven(B, C,

4   and D), Eight, Nine, Ten(A and B), Eleven, Twelve, and Thirteen, are procedurally defaulted.  In

5   addition, the ineffective assistance of counsel claims contained within Claims One, Five, Seven, and

6   Ten, are also procedurally defaulted.

7          IV.  *Cognizability*

8          Respondents argue that Witter's claims based on the International Covenant on Civil and

9   Political Rights (ICCPR), the Nevada Constitution, and the alleged ineffectiveness of state

10   post-conviction counsel are not cognizable in this federal habeas proceeding.  References to the

11   ICCPR and the Nevada Constitution are made in Claims Twelve and Thirteen.  Witter does not

12   dispute that the claims are not cognizable in this proceeding to the extent they rely on those sources

13   of law.

14          As for claims alleging ineffective assistance of state post-conviction counsel, the Supreme

15   Court has explicitly left open the question of whether there is an exception to the constitutional rule

16   that there is no right to counsel in collateral proceedings in cases where the initial-review collateral

17   proceeding is the petitioner's first opportunity to raise an ineffective assistance of trial counsel claim.

18   *See Martinez*, 132 S. Ct. at 1315.  However, 28 U.S.C. § 2254(i) precludes Witter from relying on

19   the ineffectiveness of his post-conviction attorney as a ground for relief under section 2254.  As

20   such, his various claims to that effect are not cognizable in this proceeding.

21          V.  *Motion to Supplement*

22          In his initial opposition to the respondents' motion to dismiss, Witter made no claim that he

23   could show cause and prejudice to overcome any procedural default of his claim.  He asks the court

24   for the opportunity to make such a showing in light of the Supreme Court's recent decision in

25   *Martinez*, which was issued after he filed his initial opposition.  ECF No. 208.  Witter included a

26

1   proposed supplement with his motion.  ECF No. 208-1.

2   　　　　In *Martinez*, the Court held that, in collateral proceedings that provide the first occasion to

3   raise a claim of ineffective assistance at trial, ineffective assistance of post-conviction counsel in that

4   proceeding may establish cause for a prisoner's procedural default of such a claim.  *Martinez*, 132 S.

5   Ct. at 1315.  The Court stressed that its holding was a "narrow exception" to the rule in *Coleman v.*

6   *Thompson*, 501 U.S. 722 (1991), that "an attorney's ignorance or inadvertence in a postconviction

7   proceeding does not qualify as cause to excuse a procedural default."  *Martinez*, 132 S.Ct. at 1315.  It

8   is clear from the opinion that the exception does not extend beyond ineffective assistance of trial

9   counsel claims.  *See id.* at 1320.

10   　　　　In his proposed supplement, Witter makes *Martinez* arguments with regard to ineffective

11   assistance of trial counsel claims contained in Claims One, Two, Six, Seven, Nine, Ten, and Eleven,

12   of his second amended petition.  ECF No. 208-1, p. 21-51.  Because Claim Two is not procedurally

13   defaulted, a showing cause and prejudice in relation to that claim is not necessary.  The ineffective

14   assistance of trial counsel claims under the remaining claims are time-barred, as well as procedurally

15   defaulted.  As such, the court is not inclined to delay the proceedings herein in order to entertain

16   *Martinez* briefing on those claims.

17   　　　　Witter's motion for leave to file a Martinez supplement to his opposition is denied.

18   　　　　**IT IS THEREFORE ORDERED** that respondents' motion to dismiss (ECF No.173) is

19   GRANTED in part and DENIED in part.  For the reasons set forth above, the following claims in

20   petitioner's second amended petition (ECF Nos. 167) are DISMISSED:  Claims One(B), Three,

21   Five(A), Six, Seven(B, C, and D), Eight, Nine, Ten(A and B), Eleven, Twelve, Thirteen, and all the

22   ineffective assistance of counsel claims contained within Claims One, Five, Seven, and Ten.

23   　　　　**IT IS FURTHER ORDERED** that petitioner's "motion to supplement opposition to

24   motion to dismiss second-amended petition for a writ of habeas corpus" (ECF No. 208) is DENIED.

25   　　　　**IT IS FURTHER ORDERED** that respondents shall have **forty-five (45) days** from the

26

date on which this order is entered within which to file their answer to petitioner's remaining claims. In all other respects, the scheduling of this matter is governed by the order entered April 7, 2011 (ECF No. 163).

     **IT IS FURTHER ORDERED** that motions for leave to file excess pages (ECF Nos. 194/206) are GRANTED *nunc pro tunc* as of their respective filing dates.

     DATED:  September 21, 2012

_____
UNITED STATES DISTRICT JUDGE

25