1

2

3

4

5

6

7                           **UNITED STATES DISTRICT COURT**

8                                 **DISTRICT OF NEVADA**

9
    WILLIAM WITTER,                          )
10                                           )
                    Petitioner,              )        2:01-CV-1034-RCJ-CWH
11                                           )
    vs.                                      )
12                                           )        **ORDER**
    RENEE BAKER, *et al.*,                   )
13                                           )
                    Respondents.             )
14                                           )
    _____/
15

16          Petitioner Witter has filed a motion seeking relief from the order and judgment denying his

17   petition for writ of habeas corpus.  ECF No. 250.  Relying on Fed. R. Civ. P. 59(e), he argues that

18   this court should reconsider:  (1) its rulings that he is not entitled to equitable tolling; (2) its

19   dismissal of Claim Three based on the determination that it does not "relate back" to an earlier filed

20   petition; (3) its procedural rulings with respect to Claim Two; (4) its denial of Claim Seven(A); and

21   (5) its denial of Claim Ten(C).  In the alternative, Witter asks the court to grant a certificate of

22   appealability for the foregoing issues.

23          I.  *Rule 59(e) standard*.

24          Under Federal Rule of Civil Procedure 59(e), a party may move to have the court amend its

25   judgment within twenty-eight days after entry of the judgment.  "A motion for reconsideration under

26   Rule 59(e) 'should not be granted, absent highly unusual circumstances, unless the district court is

1 presented with newly discovered evidence, committed *clear error*, or if there is an intervening

2 change in the controlling law.'" *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999)

3 (quoting *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir.1999) (emphasis added)).

4 "Since specific grounds for a motion to amend or alter are not listed in the rule, the district court

5 enjoys considerable discretion in granting or denying the motion." *Id*. at 1255, n.1 (quoting 11

6 Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (2d ed.1995)).  Even so,

7 amending a judgment after its entry remains "an extraordinary remedy which should be used

8 sparingly." *Id*.

9       II. *Discussion*.

10           1. Equitable Tolling.

11       Witter argues that this court erred in concluding that he is not entitled to equitable tolling

12 from the time he filed his initial petition in 2001 until he filed his first amended petition in 2005.  In

13 dismissing several of Witter's claims as untimely, the this court rejected his arguments that he

14 should be granted equitable tolling due to his reliance on Ninth Circuit precedent, this court's

15 "standard procedure" for adjudicating capital cases in effect at the time he initiated this proceeding in

16 2001, the State's dilatory conduct during discovery proceedings, and delays caused by the frequent

17 change in federal habeas counsel assigned to represent him.  ECF No. 213, p. 4-8.[1]

18       Witter subsequently sought reconsideration of the court's denial of equitable tolling, relying

19 on the Ninth Circuit's intervening decision in *Sossa v. Diaz*, 729 F.3d 1225 (9th Cir. 2013).  ECF No.

20 241.  The court denied reconsideration upon concluding that "[i]mportant distinguishing factors

21 make Sossa's claim for equitable tolling much stronger than Witter's."  ECF No. 246, p. 2-3.  In

22 particular, the court noted that Sossa was proceeding without counsel and with limited access to

23 legal resources and filed his amended petition only eighteen days after the statutory deadline.  *Id*., p.

24

---

25     [1] References to page numbers the court's record are based on CM/ECF pagination, which may differ from the page numbering on the imaged document.

26

3.  In addition, Sossa's initial petition contained no substantive claims, which meant that a denial of equitable tolling would have meant the complete dismissal of his case, an unreasonable result under the circumstances.  *Id*., p. 4.

The circumstances Witter identifies to support his claim for equitable tolling are the following:  (1) this court's "affirmatively misleading" instructions directing him on when to file his amended petition; (2) the involvement by the Nevada Office of the Attorney General (counsel for Respondents in this action) in the development of the standard procedures, which further reinforced the reasonable belief that the State would not assert a timeliness defense against an amended petition filed according to this court's implementation of the standard procedures; (3) respondents' failure to assert a timeliness defense in the intervening years; (4) dilatory conduct by the State in court-ordered discovery proceedings; (5) a five-month period when Witter was without assistance of counsel; (6) still-controlling Ninth Circuit precedent (*McDaniel v. United States Dist. Ct. (Jones)*, 127 F.3d 886, 887-88 (9th Cir. 1997)), which had the effect of endorsing the standard procedures in place in this district; and (7) Ninth Circuit precedent, subsequently overruled, holding that new claims in an amended petition arising from the same conviction and sentence would "relate back" to an earlier petition.  According to Witter, the court erred by not addressing all seven circumstances.  In addition, he argues that, of the three circumstances it did address – i.e., the first, fourth, and seventh circumstance listed above – the court incorrectly assessed the impact of its "affirmatively misleading scheduling orders" and the "State's dilatory conduct."

As a starting point, this court is not obligated to specifically address each argument presented by a party irrespective of the argument's potential merit.  The court did not previously address Witter's equitable tolling arguments based on *McDaniel v. United States Dist. Ct. (Jones)*, 127 F.3d 886, 887-88 (9th Cir. 1997), and the involvement by the Nevada Office of the Attorney General in the development of the standard scheduling procedures because they lacked sufficient persuasive impact to warrant discussion.  The latter predated by several years the implementation of the statute of

3

1   limitations under 28 U.S.C. § 2244(d).  And, to the extent that *Jones* condoned this court's then-

2   standardized procedures, it did so in a context wholly unrelated to the timeliness of habeas petitions.

3         With respect to the five-month period when he was without assistance of counsel, Witter is

4   referring to the period between the date on which this court granted his motion to appoint counsel

5   (September 17, 2001) and the date on which Office of the Federal Public Defender (FPD) accepted

6   the court's appointment (February 6, 2002).  In his initial opposition to the respondents' motion to

7   dismiss, Witter argued that dismissing his amended claims as time-barred would deprive him of his

8   right to counsel under 18 U.S.C. § 3599(a)(2) because this action would be based on the "bare bones

9   petition he filed without assistance of counsel."  ECF No. 195, p. 54-57.  However, he only passingly

10  mentioned the delay in counsel accepting appointment as an extraordinary circumstance that

11  supports equitable tolling.  *Id.*, p. 26-27.  Even so, this court did not ignore the argument, as Witter

12  claims.  Instead, the court noted that, even if the statute of limitations was tolled until the date the

13  FPD accepted appointment, Witter's amended petitions would still be filed well beyond the statutory

14  period.  ECF No. 213, p. 10-11.

15        The remaining "extraordinary circumstance" not yet specifically addressed by the court is

16  respondents' failure to assert a timeliness defense during the time period between the initial petition

17  and the amended petitions.  The respondents asserted timeliness as an affirmative defense in their

18  initial responses to Witter's first and second amended petitions, respectively.  ECF Nos. 84 and 173.

19  Witter cites to no case law to support the proposition that respondents were otherwise obligated to

20  interpose a timeliness objection in these proceedings.  Moreover, the Supreme Court has held that

21  the federal court may address timeliness *sua sponte* unless the State has strategically withheld the

22  defense or knowingly relinquished it.  *Day v. McDonough*, 547 U.S. 198, 210-11 (2006).  Because

23  there is no indication in the record that the State did either, this court was permitted to consider

24  timeliness irrespective of whether or when the defense was raised.

25        Turning to the circumstances that Witter concedes to have been considered by the court,

26

1    albeit erroneously, Witter has not shown that the court's prior denial of equitable tolling constitutes

2    clear error, such that relief under Rule 59(e) is warranted.  The court stands by its decision that its

3    scheduling orders in this case were not "crucially misleading" in the same manner as the relevant

4    orders in *Sossa* and *Prieto v. Quarterman*, 456 F3d 511 (5th Cir. 2006), the two primary cases Witter

5    relies upon.  In both those cases, the court set a deadline that gave an *unrepresented* petitioner

6    permission to file his *initial substantive petition* on a date beyond the statutory deadline.  *Sossa*, 729

7    F.3d at 1227-28; *Prieto*, 456 F3d at 514-15.  In this case, Witter was represented by counsel during

8    the relevant time period and granted extensions to file an amended petition, with no affirmative

9    assurance from the court that amended claims would relate back to his timely initial petition.[2]

10       With respect to the State's alleged dilatory conduct, the Ninth Circuit has found equitable

11   tolling warranted in cases where a diligent petitioner was unable to file a timely petition due to a

12   significant delay caused by the State.  *See Espinoza-Matthews v. California*, 432 F.3d 1021(9th Cir.

13   2005) (applying equitable tolling for period of almost eleven months during which pro se petitioner

14   was housed in administrative segregation and was denied access to his legal materials throughout

15   that time despite diligent efforts to obtain access);  *Stillman v. LaMarque*, 319 F.3d 1199 (9th Cir.

16   2003) (applying equitable tolling where prison litigation coordinator promised petitioner's attorney

17   he would obtain prisoner's signature in time to file petition but broke the promise and caused petition

18   to be late).  In those cases, however, the impediment to filing was far more substantial than that

19   alleged here, i.e., alleged delays by the Las Vegas police and the district attorney in providing

20   discovery material.  *Id*.; *See also Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999) (noting that

21   equitable tolling permitted "only if extraordinary circumstances beyond a prisoner's control make it

22   impossible to file a petition on time").  Discovery in habeas case is designed to support claims that

23   already exist, not to develop new ones.  *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997) (holding

24   that good cause for discovery in the habeas context exists "where specific allegations before the

25   ───────────────

26       [2]  Witter's initial petition contained fourteen substantive habeas claims.  ECF No. 5.

1   court show reason to believe that the petitioner may, if facts are fully developed, be able to

2   demonstrate that he is . . . entitled to relief").  Thus, discovery-related delays are not an obstacle to

3   filing that will justify equitable tolling.

4        Witter also argues that Witter did not fully consider the "extraordinary circumstances" that

5   occurred between the issuance of the decision in *Mayle v. Felix*, 545 U.S. 644 (2005), which

6   clarified the relation back doctrine with respect to newly-added habeas claims, and the date on which

7   Witter filed his amended petition.  In denying equitable tolling, this court noted that, even with

8   discovery proceedings concluded, Witter "waited five full months after the decision in *Mayle* to file

9   his first amended petition."  ECF No. 213, p. 8.  Witter points to untimely attorney resignations

10  within the Federal Public Defender's office and the office's excessive caseload during that time

11  period.  According to Witter, his situation is analogous to that faced by the petitioner in *Calderon v.*

12  *U.S. Dist. Court (Beeler)*, 128 F.3d 1283, 1286 (9th Cir. 1997), the first case in which the Ninth

13  Circuit recognized the availability of equitable tolling with respect to the time limitation imposed 28

14  U.S.C. § 2244(d).  However, there are significant distinctions between the cases.

15       To begin with, the court in *Calderon (Beeler)* decided to equitably toll the statute because

16  Beeler's lead counsel had withdrawn after accepting employment in another state and left behind an

17  unusable work product for replacement counsel.  128 F.3d at 1288-89.  Here, the Federal Public

18  Defender's office has served as Witter counsel from the time it accepted appointment in 2002.  There

19  has been no change of counsel, only change of staff working on the case, which, given the length of

20  these proceedings, is not extraordinary.  There is no allegation that work performed on Witter's case

21  by departing staff was not preserved within the office or usable by remaining staff.  In addition, the

22  statutory time limit was tolled in *Calderon (Beeler)* to allow Beeler to file his initial petition, which,

23  as a matter of equity, presents a more compelling case for relief.

24       Lastly, the court in *Calderon (Beeler)* was addressing a petition for writ of mandamus filed

25  by the State challenging the district court's decision to grant equitable tolling.  Thus, the court was

26

1    required to employ a very deferential standard in determining whether the lower court was correct in

2    doing so.  *See id.* at 1288 (noting that the court would upset the district court's decision only if it was

3    clearly erroneous as a matter of law).  In contrast, under Rule 59(e), this court is obligated to reverse

4    its prior decision to deny equitable tolling only if *that* decision was clear error.  Because it is

5    arguable that this court's decision was correct, the Rule 59(e) standard has not been met.

6         Upon further consideration, however, this court agrees that Witter is at least entitled to a

7    certificate of appealability (COA) with respect to the equitable tolling issue.  A COA may issue

8    when the petitioner "has made a substantial showing of the denial of a constitutional right."  28

9    U.S.C. § 2253(c)(2).  This showing can be established by demonstrating that "reasonable jurists

10   could debate whether (or, for that matter, agree that) the petition should have been resolved in a

11   different manner" or that the issues were "adequate to deserve encouragement to proceed further."

12   *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4

13   (1983)).  For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether

14   the petition states a valid claim of the denial of a constitutional right and (2) whether the court's

15   procedural ruling was correct.  *Id.*

16        The "substantial showing" standard for a COA is "relatively low."  *Jennings v. Woodford*,

17   290 F.3d 1006, 1010 (9th Cir. 2002).  Moreover, the *Barefoot* court noted that "in a capital case, the

18   nature of the penalty is a proper consideration in determining whether to issue a certificate of

19   [appealability]."  *Barefoot*, 463 U.S. at 893.  At least some of the claims that this court barred as

20   untimely state a valid claim of the denial of a constitutional right.  The court also finds that

21   reasonable jurists could debate its resolution of the equitable tolling issue.  In other words, the

22   question of whether this court erred in denying equitable tolling is adequate to deserve

23   encouragement to proceed further.

24              2.  Relation back of Claim Three

25        Witter also challenges the dismissal of Claim Three as untimely.  Claim Three alleges that

26

7

the prosecutor's use of a peremptory challenge to strike a particular African-American woman from the jury panel was racially motivated in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986), and its progeny.  In dismissing the claim, this court rejected Witter's argument that the claim relates back to a claim in his initial petition.  ECF No. 213, p. 11.  Citing *Schneider v. McDaniel*, 674 F.3d 1144, 1151 (9th Cir. 2012), this court concluded that the core facts underlying Claim Three are different in type from the core facts underlying the relevant claim in the initial petition because the latter claim consists "merely of a broad allegation that Witter's due process rights were violated because counsel failed to argue on direct appeal that the State excluded minorities from the jury panel.  *Id.*

In seeking reconsideration of that determination, Witter attempted to distinguish *Schneider* from this case by arguing that the initial claim and amended claim in *Schneider* were based on different theories (i.e., alleged trial counsel errors versus alleged trial court errors), while in this case, both claims involved the same theory (i.e., alleged ineffective assistance of appellate counsel).  ECF No. 245, p. 6-7 (citing *Schneider*, 674 F.3d at 1151).  This court rejected that argument because the allegation of ineffective assistance of appellate counsel in Claim Three is merely a brief appendage to what it is primarily a substantive *Batson* claim and, moreover, the absence of specific supporting facts in the initial claim forecloses relation back.  ECF No. 246, p. 6-7.

Now, with his Rule 59(e) motion, Witter again contends that *Schneider* is inapposite to this case, but for a different reason.  Specifically, he points to the court's holding in *Schneider* that an ineffective assistance of appellate counsel claim based on counsel's failure to raise a particular claim does not relate back to an initial claim that appellate counsel was ineffective based on his failure to raise "additional grounds that will be found once an attorney is appointed for petitioner."  *Schneider*, 674 F.3d at 1151-52.  He argues that this case is different because, in both his initial petition and his amended petition, he claimed the appellate counsel was ineffective for failing to raise a *Batson* issue on appeal.

Once again, Witter ignores that Claim Three of his amended petition is, first and foremost, a

substantive *Batson* claim aimed at the conduct of the prosecutor and the trial court in relation to the State's use of a peremptory challenge to remove an African-American woman.  ECF No. 167, p. 118-46.  In that respect, this court properly relied on *Schneider* to conclude that the core facts underlying Claim Three are different in type than the core facts underlying the claim in Witter's initial petition.  *See Schneider*, 674 F.3d at 1151 (holding that an amended theory based on the trial court's alleged errors does not relate back to an original theory based on trial counsel's alleged failures).

To the extent that Claim Three raises an ineffective assistance of appellate counsel claim, this court conceded that Witter was correct in arguing that the immediately foregoing holding in *Schneider* does not apply.  ECF No. 246, p. 6-7.  The fact remains, however, the claim in his initial petition (which alleged nothing more than that appellate counsel was ineffective for not arguing that his constitutional rights were violated due the State's exclusion of minorities from the jury panel) lacked specific facts sufficient to permit the amended to claim to relate back to it.  Witter contends that, under *Dye v. Hofbauer*, 546 U.S. 1 (2005), this court is required to incorporate, as part of the pleading in his initial petition, the state court decisions he attached to the petition, which discuss additional facts related to Ground Three.  In *Dye*, however, the habeas petition "made clear and repeated references to an appended supporting brief, which presented Dye's federal claim with more than sufficient particularity."  546 U.S. at 4.  Here, Witter's initial petition did not similarly alert the court or the respondents that relevant portions of attached state court decisions were to be made a part of his pleaded claims.

Based on the foregoing, the court declines to alter or amend its decision to dismiss Claim Three as untimely.

### 3.  Treatment of Claim Two under *Martinez v. Ryan*, 132 S.Ct. 1309 (2012)

Witter asks this court to reconsider, for at least a third time, the question of whether the court incorrectly concluded that *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), did not apply to this court's

1   adjudication of Claim Two because the claim was not procedurally defaulted.  Claim Two alleges

2   ineffective assistance of trial counsel in the penalty phase due to counsel's failure to present certain

3   mitigating evidence, primarily evidence related to fetal alcohol exposure, and to rebut evidence

4   presented at trial regarding Witter's gang affiliation.  In ruling upon respondents' motion to dismiss

5   the claim, the court determined that a *Martinez* showing is unnecessary because the claim was

6   presented to the Nevada Supreme Court in Witter's first state post-conviction proceeding and,

7   therefore, not barred by the doctrine of procedural default.  ECF No. 213, p. 24.

8           The problem for Witter is that, under *Cullen v. Pinholster*, 131 S.Ct.1388 (2011), that

9   determination limited this court's consideration of evidence in support of Claim Two to the evidence

10  that was before the state court in Witter's first state post-conviction proceeding.  ECF No. 247, p. 10-

11  13 (citing *Pinholster*, 131 S.Ct. at 1398).  Witter insists that this court must apply a *Martinez*

12  analysis to the "the whole of Claim Two" – i.e., the claim as presented in his second state post-

13  conviction proceeding, which included the presentation of evidence beyond that which was presented

14  in the first state post-conviction proceeding.

15          This court previously rejected Witter's argument that *Dickens v. Ryan*, 740 F.3d 1302 (9th

16  Cir. 2014), compelled this court to apply *Martinez* in order to determine whether alleged ineffective

17  assistance of counsel in Witter's  first state post-conviction proceeding allowed this court to broaden

18  the scope of evidence to be considered in support of Claim Two.  Specifically, the court concluded

19  that *Dickens* did not help Witter because its holding that the *Pinholster* limitation did not apply to a

20  procedurally defaulted ineffective assistance claim relied on the fact that the claim was not

21  previously adjudicated on the merits by the state courts, a circumstance not present here.  ECF No.

22  246, p. 5-6.

23          Witter now argues that this court erred in its application of *Dickens* because it overlooked

24  similarities between what occurred in the district court in *Dickens* and what occurred here.  *Dickens*

25  also involved a claim of ineffective assistance due to counsel's failure to investigate and present

26

10

1   mitigating evidence.  *Dickens*, 740 F.3d 1316-17.  Citing to the district court record in *Dickens*,

2   Witter notes that the district court concluded that the claim was exhausted to the extent that it was

3   presented in Dickens's first state post-conviction proceeding, but procedurally defaulted to the extent

4   that it included factual allegations that could have been presented in earlier proceedings.  ECF No.

5   250, p. 21.  Witter further notes that the district court also denied Dickens's request to expand the

6   record and, in subsequently addressing the merits of the claim, limited its consideration to the

7   allegations and evidence that had been presented in the first state post-conviction proceeding.  *Id*.

8        Witter claims that he "is in precisely the same position."  ECF No. 250, p. 22.  This court

9   would be inclined to agree but for one dispositive distinction – that being, that the district court in

10  *Dickens* concluded, with respect to his federal court ineffective assistance of counsel claim, "that

11  Dickens's new allegations and proffered evidence fundamentally altered his previously exhausted

12  IAC claim."  *Dickens*, 740 F.3d at 1317.  Because the claim was still unexhausted, the court of

13  appeals determined that "the district court correctly determined that Dickens's newly enhanced

14  *Strickland* claim [was] procedurally barred.  *Id*. at 1319.

15       In agreeing with the lower court that Dickens's new allegations and evidence "fundamentally

16  altered" the claim he had presented to the state court, the Ninth Circuit noted that "the new evidence

17  creates a mitigation case that bears little resemblance to the naked *Strickland* claim raised before the

18  state courts," where "Dickens did not identify any specific conditions that sentencing counsel's

19  allegedly deficient performance failed to uncover."  *Dickens*, 740 F.3d at 1319.  Here, by contrast,

20  the IAC claim that Witter presented in his first state post-conviction proceeding specifically alleged

21  that counsel was ineffective in failing to present evidence related to fetal alcohol exposure and in

22  failing to rebut the State's case regarding alleged gang activity.  ECF No. 169-2, p. 72-79.  Indeed,

23  prior to the issuance of *Martinez*, Witter argued that Claim Two was exhausted by virtue of its

24  presentation to the Nevada Supreme Court in his first state post-conviction proceeding.  ECF No.

25  195, p. 109.  Because the fundamental premise supporting the holding in *Dickens* is absent here, the

26

11

1   court stands by its prior decision.

2          4.  Denial of Claim Seven(A)

3          Witter argues that this court erred in denying Claim Seven(A) on the merits.  In Claim

4   Seven(A), Witter claimed that his constitutional rights were violated because the trial court gave an

5   improper instruction on premeditation and deliberation. Relying on *Byford v. State*, 994 P.2d 700

6   (Nev. 2000), he argued that the instruction was unconstitutional because it relieved the State of its

7   burden of proof on an essential element of first degree murder and permitted his conviction for first

8   degree murder "even if his determination to kill was a 'mere unconsidered and rash impulse' or

9   'formed in passion.'"  ECF No. 167, p. 181 (quoting *Byford*, 994 P.2d at 714).

10         In denying relief, this court concluded that *Babb v. Lozowsky*, 719 F.3d 1019 (9th Cir. 2013),

11  undermined that argument.  In *Babb*, the Ninth Circuit held that its prior holding in *Polk v. Sandoval*,

12  503 F.3d 903 (9th Cir. 2007), regarding the constitutionality of the relevant instruction (referred to as

13  the *Kazalyn* instruction[3]) is no longer good law in light of intervening Nevada Supreme Court

14  decisions.  *Id*. at 1030.  More specifically, the court in *Babb* held that the federal court must defer to

15  the Nevada Supreme Court's determination that *Byford* constituted a change in, not a clarification of,

16  Nevada law and, as result, it did not apply retroactively.  *Id*. at 1029-30.  Thus, because Witter's

17  conviction pre-dated *Byford* by several years, the change in the law did not apply to his conviction.

18         Witter argues that the *Kazalyn* instruction nonetheless violated his constitutional rights

19  because it erased the distinction between first and second degree murder and, moreover, the Nevada

20  Supreme Court's decision  to characterize *Byford* as a change in the law,[4] rather than a clarification,

21  "constituted a subterfuge designed to evade federal review, independently violating his due process

22  rights."  ECF No. 250, p. 24.  However, states are free to define the elements of state crimes.

23  _____

24         [3] So named because its use was condoned by the Nevada Supreme Court in *Kazalyn v. State*, 825
    P.2d 578 (Nev. 1992),

25         [4] The relevant decision is *Nika v. State*, 198 P.3d 839 (Nev. 2008).

26                                        12

1   *Apprendi v. New Jersey*, 530 U.S. 466, 484-87 (2000); *McMillan v. Pennsylvania*, 477 U.S. 79,

2   84-86 (1986).  With the question squarely before it, the court in *Babb* determined that the *Kazalyn*

3   instruction did not violate due process.  *Babb*, 719 F.3d at 1030.  Despite Witter's disagreement with

4   the decision, this court is bound by the holding in *Babb* with respect to pre-*Byford* cases involving

5   the *Kazalyn* instruction.[5]

6        Witter also challenges this court's determination that, even if a constitutional violation

7   occurred, the error was harmless.  Specifically, the court concluded that any error based on the

8   instruction at issue was harmless in this case for the same reason it was harmless in *Babb* – that

9   being the jury undoubtedly found Witter guilty of first degree murder by means of the felony- murder

10  rule.  ECF No. 247, p. 25 (citing *Babb*, 719 F.3d  at 1034).  According to Witter, this court was

11  required to adhere to the Ninth Circuit's decision in *Sheppard v. Rees*, 909 F.2d 1234 (9th Cir. 1990),

12  not *Babb*, in conducting its harmless error analysis.

13       In *Sheppard*, the court held that the reviewing court could not base harmless error on a

14  felony-murder theory where that theory was not included in the charging document (only in jury

15  instructions formulated post-trial) and the jury rendered a general verdict without indicating the legal

16  theory upon which it relied.  *Sheppard*, 909 F.2d at 1237-38.  As respondents point out, *Sheppard*

17  does not apply here because lack of notice of the felony-murder theory was the constitutional error at

18  the heart of the case.  The court concluded that the error was "of such a fundamental nature" that it

19  could not be treated as harmless under either a felony-murder theory or a premeditation theory.  *Id*.

20  Thus, this court did not err by applying a harmless error analysis consistent with *Babb*.

21            5.  Denial of Claim Ten(C)

22       Witter argues that this court erred in denying Claim Ten(C) on the merits.  In Claim Ten(C),

23

24       [5]  Witter also contends that *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004), and similar cases
    required this court to independently apply *Polk* in his case because the *Byford* decision narrows the
25  scope of the first-degree murder statute and therefore must be retroactively applied to him.  This
    argument is also foreclosed by *Babb*.  *See Babb*, 719 F.3d at 1028.

26

Witter alleged that his constitutional rights were violated as a result of the State introducing

testimony from the victim Kathryn Cox that was beyond the scope of admissible victim-impact

evidence, as defined by the Supreme Court in *Booth v. Maryland*, 482 U.S. 496 (1987).  This court

determined that it must defer to the Nevada Supreme Court's decision on the matter because

"fair-minded jurists could disagree" as to whether the state court erred in concluding that Cox's

testimony was the type of testimony prohibited under *Booth*.  ECF No. 247, p. 27 (citing *Yarborough*

*v. Alvarado*, 541 U.S. 652, 664 (2004)).

Witter now argues that this court erred by analyzing the claim only under 28 U.S.C. §

2254(d)(1), without inquiring whether Witter could overcome § 2254(d)(2) by showing that the

Nevada Supreme Court's adjudication "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding."  In this

regard, Witter contends that the Nevada Supreme Court made an unreasonable determination of fact

when it found that Cox's entreaty to the jury to show no mercy to the defendant was not an

expression of her opinion as to what sentence Witter should receive, but instead merely a request to

the jury to return the most severe verdict that it deemed appropriate.

As explained in *Hibbler v. Benedetti*, 693 F.3d 1140 (9th Cir. 2012), unreasonableness in this

context is a higher standard than incorrectness:

> [I]f a petitioner challenges the substance of the state court findings, it is not enough
> that we would reverse in similar circumstances if this were an appeal from a district
> court decision.  Rather, we must be convinced that an appellate panel, applying the
> normal standards of appellate review, could not reasonably conclude that the finding
> is supported by the record.  Similarly, when the challenge is to the state court's
> procedure, mere doubt as to the adequacy of the state court's finding of fact is
> insufficient; we must be satisfied that *any* appellate court to whom the defect [in the
> state court's fact-finding process] is pointed out would be unreasonable in holding that
> the state court's fact-finding process was adequate.

*Hibbler*, 693 F.3d at 1146-47 (internal quotation marks & citations omitted; emphasis in original).

To the extent it did not expressly address the issue in its previous denial of Claim Ten©, this court

now concludes that the Nevada Supreme Court's findings of fact with respect to Cox's testimony

14

1    was not so incorrect that it satisfies the highly deferential standard described in *Hibbler.*

2            In addition to claiming that this court erroneously omitted analysis under § 2254(d)(2), Witter

3    argues that this court overlooked his argument that the Nevada Supreme Court misapplied *Booth* and

4    *Payne* by focusing on the intent behind the comments at issue, rather than assessing the likely effect

5    they had on the jury, and by not recognizing that Cox's testimony is "indistinguishable" from the

6    statements found improper in *Booth*.  Here again, Witter falls short of establishing that the Nevada

7    Supreme Court's application of federal law was objectively unreasonable.  *See Tong Xiong v. Felker*,

8    681 F.3d 1067, 1074 (9th Cir. 2012) ("We look to the state court's *decision*, as opposed to its

9     reasoning, to determine whether it was an unreasonable application of clearly established Supreme

10   Court precedent. . . . Our inquiry is strictly limited to whether the state court's application of clearly

11   established Supreme Court precedent in its final decision was objectively unreasonable." (internal

12   quotation marks and citations omitted)); *Merced v. McGrath*, 426 F.3d 1076, 1081 (9th Cir. 2005)

13   ("it is the state court's decision, as opposed to its reasoning, that is judged under the 'unreasonable

14   application' standard"); Brian R. Means, Federal Habeas Manual § 3:70 (2014) ("Circuit courts are

15   generally in agreement that § 2254(d)(1)'s 'unreasonable application' clause should be applied only

16   to the *result* of a state decision; federal courts are not to scrutinize the *reasoning* applied by state

17   courts in reaching their decisions.").

18           This court also stands by its determination that any error in admitting Cox's victim impact

19   testimony was harmless error.  Witter contends that the court focused only on the sentence *selection*

20   component of the jury's penalty determination and failed to consider the harmful effect Cox's

21   testimony may have had on the jury's threshold determination that Witter was *eligible* for the death

22   penalty.  In particular, Witter suggests that, in the absence of an instruction as to when it could

23   consider Cox's testimony, a reasonable juror would have understood that he or she was entitled to

24   consider the testimony in the context of determining the weight to ascribe to the later-invalidated

25   aggravating circumstance regarding the sexual assault.  This argument is devoid of merit.  With or

26

1  without the challenged testimony, there is no reasonable doubt that the jury would have nonetheless

2  found the sexual assault aggravator.  And, given the tenuous connection between the two, the

3  particular weight the jury assigned to that aggravator would not have been appreciably impacted by

4  the Cox's "no mercy" comments.

5        III. *Conclusion*

6        For the reasons discussed above, Witter is not entitled to relief under Rule 59(e) with respect

7  to this court's order and judgment denying his habeas petition on the merits, except for the court's

8  decision to deny a COA.  The court amends the final order and judgment to grant a COA on the issue

9  of whether Witter is entitled to equitable tolling in relation to the filing of his amended petitions.

10        **IT IS THEREFORE ORDERED** that petitioner's motion to alter or amend judgment under

11  Rule 59(e) (ECF No. 250) is GRANTED with respect to the court's decision to deny a COA.  In all

12  other respects, the motion is DENIED.

13        **IT IS FURTHER ORDERED** that the Certificate of Appealability is granted for the

14  following issue:

15        Whether this court erred in denying Witter's claim for equitable tolling with
16  respect to the filing of his amended habeas petitions in this action.

17  The court declines Witter's request for a COA as to any other procedural or substantive issue.

18        DATED: May 4, 2015.

UNITED STATES DISTRICT JUDGE

16